## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVIPION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 10-96519-mgd |
| | ) | |
| CHARLES TERRANCE MATTHEWS | ) | |
| AND ROBERTA LYNN MATTHEWS, | ) | CHAPTER 7 |
| | ) | |
| Debtors. | ) | |
| | ) | |

### MOTION TO GRANT NON-EXCLUSIVE PERPETUAL LICENSE IN PATENT AND FOR OTHER RELIEF PURSUANT TO 11 U.S.C. §§ 107(b) and 363(b) and (f)

Trustee S. Gregory Hays, the Chapter 7 Trustee (the "Trustee") for the consolidated estates of Charles Terrance Matthews and Roberta Lynn Matthews (the "Estate"), hereby moves the Court for the entry of an order, pursuant to Sections 107(b), 363(b) and (f) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 9018 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), authorizing the Trustee to grant a non-exclusive perpetual license to the Patent (defined below) to Avaya, Inc. ("Avaya"), free and clear of all liens, claims, interests, and encumbrances in the Estate's interest in the Patent (defined below) and Mr. John Domjancic's 20% ownership interest in the Patent, in accordance with the terms and conditions set forth below and to keep the consideration under such license agreement confidential (the "Motion"). In support of the Motion, the Trustee respectfully states as follows:

### BACKGROUND

1.      On March 8, 2005, the United States Patent and Trademark Office had issued a patent for dynamic, real-time call tracking for web-based customer relationship management to Mr. Charles Terrance Matthews ("Mr. Matthews") and Mr. John Domjancic ("Mr. Domjancic"), jointly, which patent is numbered 6,865,268 (the "Patent").

2.      On March 10, 2010, Robbins Geller Rudman & Dowd LLP f/k/a Stoia Geller Rudman & Robbins, attorneys at law, Atlanta, Georgia ("Robbins Geller") filed a lawsuit on behalf of vTRAX Technologies Licensing, Inc. a Florida corporation ("vTRAX FL") against Siemens Communications, Inc., Flagstar Bancorp, Inc., Assurity Life Insurance Company, Avaya, CSX Corporation, and Palm Coast Data, LLC, Case No. 9:10-cv-80369-KLR, and on February 1, 2011, against Salesforce.com, Case No. 9:11-cv-80124-KLR (collectively, the "Patent Litigation") in the United States District Court for the Southern District of Florida (the "Florida District Court"), alleging infringement of the Patent.

3.      On December 6, 2010 (the "Petition Date"), Mr. Matthews and his wife Roberta Lynn Matthews (collectively with Mr. Matthews, the "Debtors") filed a joint petition under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Georgia (the "Court"), initiating Case No. 10-96519-mgd (the "Bankruptcy Case").

4.      The Debtor did not disclose the Patent in his bankruptcy schedules or statement of financial affairs [Docket No. 6], and only later amended those filings [Docket Nos. 40, 49, 56, and 57] to include that asset once the Trustee independently became aware of that asset.

5.      Robbins Geller contends that when it learned of this Bankruptcy Case, it attempted to get express authorization from Mr. Matthews and Mr. Domjancic to continue prosecuting the Patent Litigation.

6.      On June 15, 2011, Robbins Geller filed a motion to withdraw from its representation of vTRAX FL in the Patent Litigation in large part due to the failure of Mr. Matthews and Mr. Domjancic to pay the expenses of the Patent Litigation, and on June 17, 2011, the Florida District Court granted Robbins Geller's motion to withdraw.

7178233v1

7.      Robbins Geller subsequently filed its notice of withdrawal and formally withdrew from representing vTRAX FL in the Patent Litigation.

8.      The Patent Litigation was dismissed *without* prejudice on June 17, 2011.

9.      Ownership of the Patent—which is the only remaining asset of material value in the Bankruptcy Case—was in continuous dispute for more than two years until March 11, 2014,[1] when the Court entered its *Order Granting Chapter 7 Trustee's Motion for Approval of Compromise and Settlement* [Docket No. 168] (the "Order").

10.     The Order approved a settlement agreement between the Trustee and multiple creditors and parties in interest, including: Mr. Domjancic, vTRAX FL, and Robbins Geller (the "Settlement"), pursuant to which the parties agreed that, among other things, as of the Petition Date, Mr. Matthews, individually, owned eighty percent (80%) of the Patent and Mr. Domjancic, individually, owned the remaining twenty percent (20%) of the Patent. Therefore, eighty percent (80%) of the Patent was determined to be property of the Estate pursuant to Section 541 of the Bankruptcy Code.

11.     The Settlement further provided that "the Trustee shall have the right, but not the obligation, to sell or *license* the Patent under such terms and conditions as the Trustee deems appropriate, subject only to Bankruptcy Court approval."    A true and correct copy of the Settlement is attached as Exhibit A to the *Motion to Approve Compromise and Settlement Between Multiple Parties* [Docket No. 131].

12.     On August 28, 2014, the Court granted the Trustee's application [Docket No. 185] (the "Broker Application") to retain IP Investments Group, LLC ("IPI") as the

---

[1]      This dispute included the ownership of the Patent (whether it was owned by vTRAX FL or Mr. Matthews and Mr. Domjancic individually) and the percentages owned by the respective putative owners.

7178233v1

Trustee's patent broker to assist the Trustee in monetizing the Patent. *See* Order Approving Broker Application [Doc. No. 193].

13.    The Trustee, as licensor under the terms of the Settlement ("Licensor"), with the assistance of IPI, has now reached an agreement with Avaya (who was a defendant in the Patent Litigation) to grant Avaya a non-exclusive perpetual license to use the Patent for a one-time material payment (the "License"). A true and correct redacted copy of the License is attached to this Motion as **Exhibit A**. The key terms of the License[2] include:

A.    Licensor agrees to grant Avaya and its affiliates a non-transferable, full, world-wide, non-exclusive, fully paid up, perpetual and irrevocable license in the Patent and any improvements thereto.

B.    Avaya and it its affiliates shall have no right to sublicense any of the patent rights obtained under the License or any rights to improvements granted under the License.

C.    Avaya agrees to pay the Licensor an up front, one-time, nonrefundable royalty fee in a material amount.

D.    Licensor agrees to release Avaya, its Affiliates, and certain third parties from any claims held by the Trustee or the Estate related to infringement of the Patent occurring prior to the Effective Date of the License and solely with respect to Avaya Licensed Products, any and all claims associated with the Patent Litigation and any actions associated therewith, and any conduct of licensing negotiations (except for representations or obligations expressly included in the License).

E.    Avaya and its Affiliates agree to release the Trustee and the Estate from any claims related to the conduct of the Patent Litigation, including Proof of Claim 4-1 in the amount of not less than $4,793.84 filed on August 2, 2011, and Proof of Claim 8-1 in the amount of not less than $994,237.77 filed on September 20, 2011, and any conduct of the licensing negotiations (except for representations or obligations expressly included in this License),

F.    The License is confidential.

G.    With certain limited exceptions, Licensor covenants not to sue Avaya and its affiliates, with respect to any claim related to the Patent Litigation, and further covenants not to sue Avaya's, its affiliates, and certain third parties with respect to certain other limited rights.

---

[2]    In the event of an inconsistency between the express terms of the License and the summary of the key terms of the License contained in this Motion, the terms of the License shall control.

7178233v1

H. Avaya and its affiliates covenant not to contest the validity of the Patent or the scope of the Patent or assist another person in contesting the validity of the Patent or the scope of the Patent.

I. The License is subject to Court approval.

J. The defendants in the Patent Litigation (other than Avaya) are carved out of the license in the Patent and improvements granted under the License, any release under the License, and the benefit of the covenant not to sue in favor of Avaya.

## RELIEF REQUESTED

14.    The Trustee hereby seeks the entry of an order, pursuant to the Settlement and Sections 107(b), 363(b) and (f) of the Bankruptcy Code and Rules 6014 and 9018 of the Bankruptcy Rules: (i) authorizing the Trustee to grant Avaya a non-exclusive perpetual license to use the Patent free and clear of all liens, claims, interests, and encumbrances in the Estate's interest in the Patent and Mr. Domjancic's 20% ownership interest in the Patent pursuant to the License; and (ii) permitting the Trustee to keep the consideration paid for the License confidential, subject only to *in camera* review by the Court and the Office of the United States Trustee, and review by creditors or parties in interest who execute a confidentiality agreement in a form that is satisfactory to the Trustee.

## BASIS FOR RELIEF

**A. The Proposed License is Authorized Under Sections 363(b) and (f) of the Bankruptcy Code and the Settlement, and is Appropriate Under the Circumstances**

15.    Pursuant to Section 363(b) of the Bankruptcy Code, "[t]he Trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1). Section 363(f) of the Bankruptcy Code further provides that the "Trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if

7178233v1

> (1) applicable nonbankruptcy law permits sale of such property
> free and clear of such interest;
> **(2) such entity consents;**
> (3) such interest is a lien and the price at which such property
> is to be sold is greater than the aggregate value of all liens on such
> property;
> (4) such interest is in bona fide dispute; or
> **(5) such entity could be compelled, in a legal or equitable
> proceeding, to accept a money satisfaction of such interest.**

11 U.S.C. § 363(f) (emphasis added). Rule 6004(f) of the Bankruptcy rules provides that sales

under Section 363 may be by private sale or public auction.

16.    Courts generally require that the decision to use, sell, or lease assets outside the

ordinary course of business be based upon the sound business judgment of the trustee. *See In re*

*Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992); *Stephens Indus v. McClung*, 789 F.2d 386, 390

(6th Cir. 1986) ("bankruptcy court can authorize a sale of all a Chapter 11 debtor's assets under

§363(b)(1) when a sound business purpose dictates such action"); *In re Abbotts Dairies of*

*Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *Committee of Equity Security Holders v. Lionel*

*Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983). Courts have made it clear that a

trustee's showing of a sound business justification need not be unduly exhaustive but, rather, a

trustee or a debtor is "simply required to justify the proposed disposition with sound business

reason." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

17.    Here, the Trustee's decision to grant a non-exclusive license to use the Patent to

Avaya is based on his sound business judgment, is specifically authorized and contemplated by

the Settlement, and should be approved. The Estate currently lacks any liquid assets and the

proposed License will provide the Estate with significant cash consideration, while at the same

allowing the Trustee to license or sell the Patent to other third parties, or if necessary and

appropriate pursue infringement litigation with respect to the Patent. The Trustee has consulted

with IPI regarding the marketing, licensing, and sale of the Patent, and has determined that under

7178233v1

the circumstances the proposed License is consistent with the Trustee's ongoing efforts to maximize the value of the Patent. Accordingly, the Trustee has a sound business justification to grant Avaya a non-exclusive license in the Patent free and clear of all liens, claims, interests, and encumbrances on the Estate's interest in the Patent, and enter into the License.

18.     Moreover, granting the License free and clear of Mr. Domjancic's 20% ownership interest in the Patent is appropriate under both Section 363(f)(2) and Section 363(f)(5) of the Bankruptcy Code. As noted above, under the Settlement, Mr. Domjancic consented to the Trustee's "right . . . to sell or license the Patent under such terms and conditions as the Trustee deems appropriate." Therefore, Section 363(f)(2)—providing that "free and clear" use of estate property is appropriate if the entity with the interest in the property consents to the use—is clearly satisfied. Similarly, because Mr. Domjancic entered into the Settlement, a legally enforceable contract, he could be compelled "in a legal or equitable proceeding, to accept a money satisfaction of such interest." *See* 11 U.S.C. § 363(f)(5). Accordingly, the Trustee, as Licensor, is authorized to grant the License to Avaya not only free and clear of all liens, claims, interests, and encumbrances in the Estate's interest in the Patent but also free and clear of Mr. Domjancic's 20% ownership interest in the Patent with or without any further consent from Mr. Domjancic.

19.     As part of the relief sought by the Trustee, the Trustee also requests that the Court to designate Avaya as a good faith purchaser as such term is utilized in Section 363(m) of the Bankruptcy Code. Such designation can be made by a bankruptcy court in the context of a sale of assets of a bankruptcy estate when it has been established that the proposed purchaser is an unrelated third party, not affiliated with or having any insider relationship with the debtor, and when the proposed transaction is for fair value and is the result of arm's length negotiations

7178233v1

between the parties. *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986).

20.     With respect to the proposed transaction, the Trustee anticipates that Avaya will meet the qualifications for designation as a good faith purchaser in that, among other things: (a) Avaya recognizes that the Trustee was free to deal with any other party interested in purchasing the License; (b) Avaya in no way induced or caused the bankruptcy filing by the Debtors; (c) all payments to be made by Avaya in connection with the License have been or will be disclosed either in camera or in accordance with a confidentiality agreement; (d) no common identity of directors or controlling stockholders exists between Avaya and the Debtors; and (e) the negotiation and execution of the License was at arm's length and in good faith.

21.     Furthermore, as part of the relief sought by the Trustee, the Trustee also requests that the Court find that neither the Trustee, nor Avaya have engaged in any conduct that would prevent the application of Section 363(m) of the Bankruptcy Code to the License or that would cause or permit the License to be voided under Section 363(n) of the Bankruptcy Code.

**B.  The Consideration under the License Should Remain Confidential**

22.     In addition to seeking Court approval of the License, the Trustee requests that the consideration paid for the License remain confidential.  Section 107(b) of the Bankruptcy Code provides, in relevant part, that "on request of a party in interest, the bankruptcy court shall . . . (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title."   Rule 9018 of the Bankruptcy Rules similarly provides, in relevant part, "that the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research,

development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code."

23.     The Trustee, in his business judgment, has concluded that the purchase price of the License is both fair and reasonable under the circumstances. However, because potential purchasers or licensees of the Patent (or defendants in future litigation) may include defendants in the Patent Litigation, other than Avaya, disclosure of the purchase price under the License may disadvantage the Trustee in future negotiations or litigation—both for the sale of the License and in future licensing arrangements with third parties or in litigation settlement discussions. The purchase price of the License is the very type of "commercial information" that Section 107(b) of the Bankruptcy Code and Rule 9018 of the Bankruptcy Rules were designed to protect. Accordingly, the Trustee requests that he be permitted to only file the redacted copy of the License that is attached hereto as **Exhibit A**. The Trustee will still make the purchase price of the License available for *in camera* review by the Court and the United State Trustee. The Trustee also proposes that any creditor or party in interest that is interested in reviewing the purchase price be permitted to do so, but only after executing a confidentiality agreement in a form approved by the Trustee.

WHEREFORE, the Trustee respectfully requests that the Court enter an order: (i) granting the Motion; (ii) authorizing the Trustee to grant Avaya the License free and clear of all liens, claims, interests, and encumbrances of the Estate's interest in the Patent and Mr. Domjancic's 20% ownership interest in the Patent, and approving the License; (iii) designating Avaya as a good faith purchaser under Section 363(m) of the Bankruptcy Code and finding that neither the Trustee, nor Avaya have engaged in any conduct that would prevent the application of Section 363(m) of the Bankruptcy Code to the License or that would cause or

7178233v1

permit the License to be voided under Section 363(n) of the Bankruptcy Code; (iv) permitting

the Trustee to keep the consideration paid for the License confidential except to the Court and

the United States Trustee via *in camera* review, and to third parties that execute a confidentiality

agreement in a form approved by the Trustee; and (v) granting the Trustee such other and further

relief as the Court deems just and proper.

Respectfully submitted this 20th day of January 2015, by:

ARNALL GOLDEN GREGORY LLP

*/s/ Sean C. Kulka*
Sean C. Kulka, GA Bar No. 648919
Telephone: (404) 873-8682
Fax: (404) 873-8683
Jonathan H. Azoff, GA Bar No. 754305
Telephone: (404) 873-8794
171 17th Street, NW
Suite 2100
Atlanta, Georgia 30363

*Attorneys for Chapter 7 Trustee*

7178233v1

EXHIBIT "A"

*Execution Version*

## LICENSE AGREEMENT

This **LICENSE AGREEMENT** (*"Agreement"*) is made and entered into as of January 12, 2015 (the *"Effective Date"*), by and among S. Gregory Hays (*"Trustee"* or *"Licensor"*), solely in his capacity as Chapter 7 Trustee for both Charles Terrance Matthews (*"Mr. Matthews"*) and Roberta Lynn Matthews (together with Mr. Matthews to be referred to as the *"Debtors"*), under Case No. 10-96519-mgd (the *"Case"*) in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division (the *"Bankruptcy Court"*) filed on December 6, 2010 (the *"Petition Date"*) under Chapter 7 of Title 11 U.S.C., et. seq. (the *"Bankruptcy Code"*) and Avaya, Inc., a Delaware corporation (*"Licensee"*). Licensor and Licensee each sometimes referred to hereinafter as a *"Party"* and, collectively, as the *"Parties"*.

### BACKGROUND

A.     On March 10, 2010 and prior to the Petition Date, vTrax Technologies Licensing, Inc., a Florida corporation (*"vTrax Technologies"*), a corporation in which Mr. Matthews purported to own stock, filed a suit in the Southern District of Florida against Licensee, among others, alleging infringement of United States Patent Letter Patent No. 6,865,268 for the dynamic real time tracking system for web-based customer relationship management issued on March 8, 2005 (the *"Patent"*). Such litigation is referred to hereinafter as the *"vTrax Litigation."* On April 30, 2010, Licensee filed an answer to the complaint in the vTrax Litigation denying all infringement with respect to the Patent (and has at all times denied all infringement of the Patent.) The vTrax Litigation was subsequently dismissed *without* prejudice.

B.     On December 6, 2010, the Debtors filed their joint voluntary bankruptcy petition. On December 30, 2010, the Trustee was appointed as interim trustee in the Case, and on January 18, 2011, at the conclusion of the meeting of creditors held pursuant to Section 341(a) of the Bankruptcy Code, the Trustee became the permanent Trustee in the Case. Debtors did not originally include their interest in vTrax Technologies or the Patent in their bankruptcy schedules and statement of financial affairs [Docket No. 6 in the Case], but later amended their bankruptcy schedules and statement of financial affairs [Docket Nos. 40, 49, 56 and 57 in the Case] to reflect such ownership. In light of conflicting claims regarding the ownership of the Patent impacting Debtors' Case, title to the Patent, and potential litigation related to the Patent, Trustee, John Michael Domjancic (*"Mr. Domjancic"*) and certain others entered into a Mutual Release and Settlement Agreement dated November 4, 2013 whereby the parties thereto agreed, *inter alia,* that (1) the Patent is owned eighty percent (80%) by Mr. Matthews and twenty percent (20%) by Mr. Domjancic, (2) Mr. Matthew's eighty percent (80%) ownership of the Patent is thus property of the Debtors' bankruptcy estate and (3) Trustee has the right to sell or license the Patent (including the interest owned by Mr. Domjancic) under such terms and conditions as Trustee deems appropriate, subject only to the approval of the Bankruptcy Court (the *"Settlement Agreement"*). The Bankruptcy Court approved the Settlement Agreement by the Order Granting Chapter 7 Trustee's Motion for Approval of Compromise and Settlement dated March 10, 2014 [Docket No. 168 in the Case].

C.     Although Licensee asserts that it has at no time infringed upon the Patent and Licensor asserts that Licensee and other third parties have infringed and continue to infringe the Patent, the Parties desire to avoid the expense, cost, and uncertainty of additional litigation

*Execution Version*

related to possible infringement claims by Licensor or its successors or assigns relating to the Patent and the substantial delay in a final determination as to the Parties' respective rights and obligations relating to the Patent, and therefore, Licensee desires (1) to acquire a non-exclusive, irrevocable worldwide, perpetual license in the Patent Rights (as defined hereinafter), free and clear of: (i) all liens, claims, interests and encumbrances in the Patent held by or against the bankruptcy estate of the Debtors (the "*Estate*") as an 80% owner of the Patent, and (ii) all interests held by Mr. Domjancic in the Patent as a 20% owner to the maximum extent possible under the Settlement Agreement, and (2) to obtain a covenant not to sue from Licensor relating to infringement claims relating to the Patent, and Licensor, subject to Bankruptcy Court approval, desires to grant such license and enter into a covenant not to sue, subject to the terms and conditions set forth in this Agreement.

D.      Licensee filed and/or holds the following proofs of claim in the Case: (i) Proof of Claim 4-1 in the amount of not less than $4,793.84 filed on August 2, 2011, and (ii) Proof of Claim 8-1 in the amount of not less than $994,237.77 filed on September 20, 2011 (collectively, the "*Proof of Claims*").

**NOW, THEREFORE**, in consideration of the foregoing premises, the mutual promises and covenants set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1.      **Definitions.** Capitalized terms used herein shall have the following meanings:

1.1     "*Affiliate*" means, with respect to any Person, any and all Persons, directly or indirectly controlling, controlled by, or under common control with such Person. Any such Person shall be deemed to be an Affiliate only as long as such control exists. For purposes of this definition, a Person shall be deemed to "control" another Person when the controlling Person (i) is directly or indirectly the legal or beneficial owner of at least fifty percent (50%) of the outstanding voting securities of a corporate entity with the right to vote for the election of the directors (or the equivalent thereof) or comparable voting interest in the Person, or (ii) has possession, directly or indirectly, of the power to direct (or cause the direction of) the management and policies of the other Person, or (iii) has control of the other Person under applicable securities laws or regulations. Notwithstanding anything contained herein to the contrary, the term "Affiliate", as used herein, shall not mean or include any of the vTrax Defendants, or any other Persons, directly or indirectly, controlling, controlled by or under the common control of a vTrax Defendant.

1.2     "*Approval Order*" means the final, non-appealable order from the Bankruptcy Court approving the granting of the License in accordance with the terms of this Agreement in the Patent Rights by Licensor to Licensee free and clear of: (i) all liens, claims, interests, and encumbrances in the interest in the Patent held by or against the Estate as a 80% owner of the Patent pursuant to 11 U.S.C. § 363(f) of the Bankruptcy Code, and (ii) all interests held by Mr. Domjancic as a 20% owner of the Patent pursuant to 11 U.S.C. § 363(f)(2) of the Bankruptcy Code, pursuant to the terms of the Settlement Agreement.

1.2a    "*Avaya Licensed Product*" means any past, present or future Avaya product, process, method or service that (by itself or incorporated into or in combination with one or more

6802852v13

*Execution Version*

other processes or methods) utilize the Patent Rights or incorporate the technology embodied in the Patent Rights.

1.3    "*Effective Date*" is defined in the first paragraph hereof.

1.4    "*Improvement*" means any modification of the Patent Rights, whether or not the making, using, selling, or importing of which would infringe upon the Patent Rights.

1.5    "*License*" is the license granted by Licensor to Licensee and its Affiliates hereunder and as defined in Section 2.1 of this Agreement.

1.6    "*Licensed Product*" means any past, present or future product, process, method or service that (by itself or incorporated into or in combination with one or more other processes or methods) utilize the Patent Rights or incorporate the technology embodied in the Patent Rights.

1.7    "*Party*" and "*Parties*" are defined in the first paragraph hereof.

1.8    "*Patent*" means United States Patent No. 6,865,268, issued on March 8, 2005 for dynamic, real-time call tracking for web-based customer management, and any patent(s) issuing thereon or on any divisionals, continuations, re-examinations, continuations-in-part, reissues, parents, foreign counterparts and any patents or applications claiming priority to U.S. Patent No. 6,865,268.

1.9    "*Patent Rights*" means the rights under the Patent, being United States Patent No. 6,865,268, issued on March 8, 2005 for dynamic, real-time call tracking for web-based customer management, and any patent(s) issuing thereon or on any divisionals, continuations, re-examinations, continuations-in-part, reissues, parents, foreign counterparts and any patents or applications claiming priority to U.S. Patent No. 6,865,268.

1.10    "*Person*" means an individual, corporation, partnership, joint venture, trust or an incorporated organization or association or other form of business enterprise or a governmental entity.

1.11    "*Royalty Fee*" has the meaning set forth in Section 2.2 of this Agreement.

1.12    "*vTrax Defendants*". for purposes of this Agreement, shall mean Siemens Communications, Inc., Flagstar Bancorp, Inc., Assurity Life Insurance Company. CSX Corporation. Palm Coast Data, LLC, SalesForce.com and any other Persons. directly or indirectly, controlling, controlled by or under the common control of a vTrax Defendant.

2.    License and Release of Intellectual Property

2.1    **License.**   Upon the issuance of the Approval Order and the payment by Licensee of the Royalty Fee to Trustee. Licensor hereby grants to Licensee and its Affiliates, and Licensee hereby accepts, a non-transferable, full, world-wide, non-exclusive, fully paid up, perpetual and irrevocable license under the Patent Rights and any Licensor Improvements thereto, with the right of Licensee to use, make, have made, offer for sale, sell, import, export, distribute, develop, modify, host or otherwise market or commercially exploit Licensed Products other than those products or services of vTrax Defendants and grants to Avaya's and its

3

6802852v13

*Execution Version*

Affiliates' customers, resellers, vendors, partners, manufacturers (including Original Equipment Manufacturers), assemblers, replicators, integrators, distributors, suppliers, partners, and retailers with respect only to Avaya Licensed Products, a non-transferable, full, world-wide, non-exclusive, fully paid up, perpetual and irrevocable License under the Patent Rights and any Licensor Improvements thereto, with the right to use, make, have made, offer for sale, sell, import, export, distribute, develop, modify, host or otherwise market or commercially exploit the Avaya Licensed Products.  Neither Licensee nor its Affiliates shall have the right to sublicense any of the Patent Rights or rights in Licensor Improvements granted hereunder.   None of Licensee's and its Affiliates' customers, resellers, vendors, partners, manufacturers (including Original Equipment Manufacturers), assemblers, replicators, integrators, distributors, suppliers, partners, and retailers shall have the right to sublicense any of the Patent Rights or rights in Licensor Improvements granted hereunder.

**2.2    Royalty Fee.**

**2.3    Licensor Release in Favor of Licensee and Affiliates for Past Conduct.** Subject to Section 10.17 below and subject to there being no material breach of this Agreement by Licensee or any of its Affiliates,  Licensor irrevocably remises, releases and discharges Licensee, its Affiliates and their subsidiaries, parents, officers, directors, managers, members, employees, agents, experts, customers, end users, consultants, and attorneys from any damages, liabilities, causes of action, or claims held by Licensor or the Estate related to: (i) infringement of the Patent Rights occurring prior to the Effective Date of this Agreement and solely with respect to Avaya Licensed Products; (ii) any and all claims associated with the vTrax Litigation and any actions associated therewith; and (iii) the conduct of licensing negotiations (except for representations or obligations expressly included in this Agreement).

**2.4    Licensee and Affiliates Release in Favor of Trustee and Estate for Past Conduct.** Licensee and its Affiliates irrevocably remise, release, and discharge Licensor and the Estate from any damages, liabilities, causes of action, or claims held by Licensee or its Affiliates related to: (i) the conduct of the vTrax Litigation; and (ii) the conduct of licensing negotiations (except for representations or obligations expressly included in this Agreement).  In addition to the foregoing release, Licensee and its Affiliates irrevocably remise, release, and discharge Licensor and the Estate from any and all claims that Licensee or its Affiliates could have asserted against Licensor and the Estate prior to the Effective Date, including the Proof of Claims, and the Proof of Claims shall be deemed to be waived and expunged without any further action by the Trustee in the Case or further order of the Bankruptcy Court.

3.    Delivery of Documentation.

3.1    **Delivery.** Promptly upon payment of the Royalty Fee and thereafter, Licensor will, subject to any applicable confidentiality restrictions, take reasonable efforts to deliver to Licensee non-privileged specifications, documentation, information and other items related to the implementation of the systems and methods of the Patent Rights (the "*Documentation*") in his possession or control, at no cost or expense to Licensee.  If during the Term, Licensor obtains any Documentation, Licensor will deliver the same to Licensee as soon as reasonably possible.

-4-

6802852v13

*Execution Version*

For the avoidance of doubt, the Parties acknowledge and agree that Licensor shall have no obligation under this Agreement to obtain, or attempt to obtain, any Documentation.

       **3.2    Improvements**. If at any time during the term of this License Agreement Licensor or its successors and permitted assigns makes Improvements to the Patent Rights, then Licensor or its successors and permitted assigns, as applicable, shall communicate such Licensor Improvements to Licensee as soon as practicable and in a fashion that will permit Licensee to use the Licensor Improvements. The License granted hereunder shall thereafter automatically encompass such Licensor Improvements without further payment of any additional royalties or fees to Licensor with respect to such Licensor Improvements. If at any time during the term of this License Agreement, Licensee makes any Improvements to the Patent Rights, such Licensee Improvements will become the sole property of Licensee and shall not be deemed at any time to infringe on the Patent Rights. All Improvements shall be and remain the sole property of the Party developing them; *provided, however,* Improvements made by Licensor and its successors and permitted assigns will be deemed a part of the License. Licensee shall own any materials, processes, ideas, inventions, improvements or modifications it develops in connection with the Patent Rights or Licensee Improvements, whether patentable or not.

      **4.**    **Representations and Warranties**.

       **4.1    Licensor's Representations.** Licensor hereby represents and warrants to Licensee, as of the Effective Date, the following:

          **(a)**    This Agreement is a valid and binding obligation of Licensor, enforceable in accordance with its terms;

          **(b)**    The Estate owns eighty percent (80%) of the Patent Rights, and Licensor has the requisite right and authority under the Settlement Agreement to sell or license 100% of the Patent Rights necessary for the consummation of the transactions contemplated by this Agreement;

          **(c)**    Subject to Bankruptcy Court approval, Licensor has full power and authority to grant the License provided in this Agreement,

          **(d)**    Subject to Bankruptcy Court approval, Licensor holds all legally required permissions to license the Patent Rights to Licensee; and

          **(e)**    Subject to Bankruptcy Court approval, Licensee will have no payment obligation to Licensor or any third parties as a result of this Agreement or the exercise of Licensee's rights contemplated under this Agreement, other than the Royalty Fee as set forth herein.

       **4.2    Licensee's Representations.** Licensee hereby represents and warrants to Licensor, as of the Effective Date, that this Agreement is a valid and binding obligation of Licensee enforceable against Licensee in accordance with its terms, except to the extent that this Agreement is subject to Bankruptcy Court approval.

6802852v13

*Execution Version*

For the avoidance of doubt, the Parties acknowledge and agree that Licensor shall have no obligation under this Agreement to obtain, or attempt to obtain, any Documentation.

   **3.2 Improvements.** If at any time during the term of this License Agreement Licensor or its successors and permitted assigns makes Improvements to the Patent Rights, then Licensor or its successors and permitted assigns, as applicable, shall communicate such Licensor Improvements to Licensee as soon as practicable and in a fashion that will permit Licensee to use the Licensor Improvements. The License granted hereunder shall thereafter automatically encompass such Licensor Improvements without further payment of any additional royalties or fees to Licensor with respect to such Licensor Improvements. If at any time during the term of this License Agreement, Licensee makes any Improvements to the Patent Rights, such Licensee Improvements will become the sole property of Licensee and shall not be deemed at any time to infringe on the Patent Rights. All Improvements shall be and remain the sole property of the Party developing them; *provided, however,* Improvements made by Licensor and its successors and permitted assigns will be deemed a part of the License. Licensee shall own any materials, processes, ideas, inventions, improvements or modifications it develops in connection with the Patent Rights or Licensee Improvements, whether patentable or not.

   **4. Representations and Warranties.**

   **4.1 Licensor's Representations.** Licensor hereby represents and warrants to Licensee, as of the Effective Date, the following:

     **(a)** This Agreement is a valid and binding obligation of Licensor, enforceable in accordance with its terms;

     **(b)** The Estate owns eighty percent (80%) of the Patent Rights, and Licensor has the requisite right and authority under the Settlement Agreement to sell or license 100% of the Patent Rights necessary for the consummation of the transactions contemplated by this Agreement;

     **(c)** Subject to Bankruptcy Court approval, Licensor has full power and authority to grant the License provided in this Agreement;

     **(d)** Subject to Bankruptcy Court approval, Licensor holds all legally required permissions to license the Patent Rights to Licensee; and

     **(e)** Subject to Bankruptcy Court approval, Licensee will have no payment obligation to Licensor or any third parties as a result of this Agreement or the exercise of Licensee's rights contemplated under this Agreement, other than the Royalty Fee as set forth herein.

   **4.2 Licensee's Representations.** Licensee hereby represents and warrants to Licensor, as of the Effective Date, that this Agreement is a valid and binding obligation of Licensee enforceable against Licensee in accordance with its terms, except to the extent that this Agreement is subject to Bankruptcy Court approval.

6802852v13

*Execution Version*

Licensee and Licensee's Affiliates hereby agree and covenant not to contest the validity of the Patent or the scope of the Patent or assist another Person to contest the validity of the Patent or the scope of the Patent. Notwithstanding anything to the contrary herein, in the event Licensee or any of Licensee's Affiliates materially breach this Agreement (including, without limitation, by contesting or assisting another Person in contesting the validity or scope of the Patent Rights), the License and other rights granted hereunder to Licensee, its Affiliates, and Licensee's and its Affiliates' customers, resellers, vendors, partners, manufacturers (including Original Equipment Manufacturers), assemblers, replicators, integrators, distributors, suppliers, partners, and retailers shall be immediately terminable by Licensor upon written notice to Licensee. For the avoidance of doubt, the filing or submission of a response by Licensee, Licensee's Affiliates, or their attorneys as required by the Bankruptcy Court, other court of competent jurisdiction, or governmental body to a third party subpoena, including providing any documents provided to Licensor, will not constitute a material breach of this Agreement; provided, that (i) Licensee or Licensee's Affiliate, as the case may be, provides prompt notice of such subpoena to Licensor, including a copy of such subpoena, and (ii) Licensor may timely object to such subpoena and may seek a protective order limiting the disclosure of such documents.

6.3    **Binding Effect.** The foregoing covenants shall be binding on each of the respective assignees and successors in interest of Licensor and Licensee. Licensor and Licensee agree to inform all such respective assignees and successors in interest of such covenants and to obtain their written consent to be bound by such covenants and to agree that Licensee and Licensor, as the case may be, shall be regarded as third party beneficiaries of such covenants with the right to enforce said covenants.

6.4    **Survival.** The provisions of this Section 6 shall indefinitely survive the expiration or termination of this Agreement.

7.    **Term.** This Agreement will take effect on the Effective Date and continue until the expiration of the Patent Rights or termination of this Agreement by mutual written agreement of the Parties.

8.    **Approval Order.** This Agreement is subject to Bankruptcy Court approval. Upon execution of this Agreement by all Parties, Trustee shall file a motion seeking Bankruptcy Court approval of this Agreement (the "*Approval Motion*"). A condition precedent to the rights and obligations of the Parties hereto shall be the entry of the Approval Order.

9.    **Third Party Beneficiary of Settlement Agreement.** Licensor hereby agrees that Licensee is a third party beneficiary of the Order.

10.    **Miscellaneous.**

10.1    **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia, applicable to contracts made and to be performed within such state, without giving effect to any choice of law that would result in the application of the laws of any other jurisdiction. Each Party submits to the exclusive jurisdiction of the Bankruptcy Court relating to the interpretation and enforcement of this Agreement.

6802852v13

*Execution Version*

**10.2    Assignment.**  Licensee may not assign any of its rights or obligations under this Agreement, without the prior written consent of Licensor; *provided, however,* that Licensee may assign this Agreement without prior written consent to a purchaser of all or substantially all of such its assets or successor by merger, consolidation or other similar event and *provided, further*, that Licensee may assign this Agreement to its Affiliates.

**10.3    Entire Agreement.**  This Agreement and exhibits hereto constitute the full and entire understanding and agreement between the Parties with regard to the subjects hereof, and all prior agreements and understandings of the Parties, whether written or oral, are superseded by this Agreement.

**10.4    Binding Effect.**  This Agreement is binding upon, will inure to the benefit of, and will be enforceable by and against each of the Parties and their respective heirs, legal representatives, successors, heirs, and any permitted assigns of the Patent Rights.

**10.5    Severability.**    Any provision of this Agreement that is prohibited, unenforceable or not authorized in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition, unenforceability or non-authorization without invalidating the remaining provisions hereof or affecting the validity, enforceability or legality of such provision in any other jurisdiction.

**10.6    Amendments.**  This Agreement may not be amended, changed, modified or altered except in writing executed by all Parties with the same formality as this Agreement is executed.

**10.7    Delays or Omissions.**  It is agreed that no delay or omission to exercise any right, power or remedy accruing to any Party, upon any breach, default or noncompliance by any other Party, shall impair any such right, power or remedy, nor shall it be construed to be a waiver of any such breach, default or noncompliance, or any acquiescence therein, or in any similar breach, default or noncompliance thereafter occurring.  It is further agreed that any waiver, permit, consent or approval of any kind or character on any Party's part of any breach, default or noncompliance under this Agreement or any waiver on such Party's part of any provisions or conditions of the Agreement must be in writing and shall be effective only to the extent specifically set forth in such writing.  All remedies, either under this Agreement or otherwise afforded to any Party, shall be cumulative and not alternative.

**10.8    Notices.**  All notices or other communications under this Agreement shall be in writing and either personally delivered, sent by certified or registered mail (return receipt requested, postage prepaid), or sent by reputable overnight delivery service, to the respective addresses set forth below (or to such other addresses as a Party may designate by notice given as aforesaid):

| | |
|---|---|
| If to Licensor, to: | S. Gregory Hays |
| | Hays Financial Consulting, LLC |
| | Suite 200 |
| | 3343 Peachtree Road, NE |
| | Atlanta, Georgia 30326-1420 |

8

6802852v13

*Execution Version*

with a copy to:                      Sean C. Kulka, Esq.
Arnall Golden Gregory LLP
171 17th Street, NW
Suite 2100
Atlanta, Georgia 30363

If to Licensee, to:               Avaya, Inc.
211 Mt. Airy Road
Basking Ridge, New Jersey 07920
Attention: Senior Director, IP Law

with a copy to:                      J. William Boone, Esq.
James-Bates-Brannan-Groover, LLP
Suite 1700, Buckhead Tower at Lenox Square
3399 Peachtree Road, NE
Atlanta, Georgia 30326

All notices and communications (i) personally delivered shall be deemed given upon receipt, (ii) sent by certified or registered mail shall be deemed given on the third business day after mailing, and (iii) sent by reputable overnight delivery service shall be deemed given on the first business day after timely delivery to the courier.

**10.9    Titles and Subtitles.**    The titles of the sections and subsections of the Agreement are for convenience of reference only and are not to be considered in construing this Agreement.

**10.10    Multiple Counterparts.**    This Agreement may be executed in multiple counterparts, each of which will constitute an original and all of which will constitute one agreement. Signatures pages exchanged by telefax, "pdf" or other electronic means will be fully binding.

**10.11    Authority to Act.**    Any person executing this Agreement in a representative capacity on behalf of any Party, hereby represents and warrants to the other Parties that it has implied or express authority to enter into this Agreement on behalf of such Party which it represents.

**10.12    No Third Party Beneficiaries.**    This Agreement is for the sole benefit of the Parties and their respective successors, heirs, and permitted assigns, and nothing herein expressed or implied gives or should be construed to give to any Person, other than the Parties and their successors, heirs, and assigns, any legal or equitable rights hereunder.

**10.13    Proof of Execution by Electronic Copy or Facsimile.**    For purposes of executing this Agreement, a document signed and transmitted by facsimile or other form of electronic transmission is to be treated as an original document. The signature of any Party thereon, for purposes hereof, is to be considered as an original signature, and the document transmitted is to be considered to have the same binding effect as an original signature on an original document. At the request of any Party, any document transmitted by facsimile, telecopy or other form of electronic transmission is to be executed in original form by the other Party. No

9

*Execution Version*

Party may raise the fact that any signature was transmitted through the use of a facsimile or other form of electronic transmission as a defense to the enforcement of this Agreement or other document executed in connection with this Agreement.

      **10.14    Pronouns.**  All pronouns contained herein, and any variations thereof, shall be deemed to refer to the masculine, feminine or neutral, singular or plural, as to the identity of the parties hereto may require.

      **10.15    Further Assurances.**  Each Party agrees to execute, deliver, acknowledge or supply such further documents, instruments and assurances as are reasonably necessary or appropriate to carry out the full intent and purposes of this Agreement.

      **10.16    Time is of the Essence.**  Time is of the essence of this Agreement.

      **10.17**    Notwithstanding anything contained in this Agreement to the contrary, the term "Affiliate", as used herein, shall not mean or include any of the vTrax Defendants (as defined in Section 1.12 of this Agreement), or any other persons, directly or indirectly, controlling, controlled by or under the common control of a vTrax Defendant. Further, no vTrax Defendant shall be released in any manner whatsoever by the execution of this Agreement nor shall it receive or be entitled to:  (i) any of the Patent Rights licensed herein to Avaya except with respect only to Avaya Licensed Products, or (ii) any of the benefits of the Covenant Not to Sue in Section 6 of this Agreement.

                   *[SIGNATURES APPEAR ON NEXT PAGE]*

680285213

*Execution Version*

IN WITNESS WHEREOF, the Parties hereto have executed this License Agreement as of the date set forth in the first paragraph hereof.

LICENSOR:

S. Gregory Hays, as Chapter 7 Trustee for Debtors, Charles Terrence Matthews and Roberta Lynn Matthews

By: _____

S. Gregory Hays,
As and only as the Chapter Trustee for Charles Terrence Matthews and Roberta Lynn Matthews

LICENSEE:

Avaya, Inc.

By: _____

Joseph C. Kirincich, Associate General Counsel

11

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVIPION

IN RE:                              )       CASE NO. 10-96519-mgd
                                    )
CHARLES TERRANCE MATTHEWS           )
AND ROBERTA LYNN MATTHEWS,          )       CHAPTER 7
                                    )
        Debtors.                    )
                                    )

## NOTICE OF HEARING

**NOTICE IS HEREBY GIVEN**, pursuant to Fed. R. Bankr. P. 2002(a)(2), 6004(a),
9014, and 9018 that S. Gregory Hays, the Chapter 7 Trustee ("Trustee") for the consolidated
bankruptcy estate (the "Estate") of Charles Terrance Matthews and Roberta Lynn Matthews
("Debtors") has filed his *Motion to Grant Non-Exclusive Perpetual License in Patent and For
other Relief Pursuant to 11 U.S.C. §§ 107(b) and 363 (b) and (f)* (the "Motion"), seeking
authorization for the Trustee to: (1) grant a non-exclusive perpetual license ("License") to the
Patent (defined in the Motion) to Avaya, Inc. ("Avaya"), free and clear of all liens, claims,
interests, and encumbrances in the Estate's interest in the Patent and  Mr. John Domjancic's 20%
ownership interest in the Patent, in accordance with the terms and conditions set forth in the
Motion, and (2) keep the material consideration to be paid under such License confidential.

The Trustee's decision to grant the non-exclusive License to use the Patent to Avaya is
permissible under the Bankruptcy Code, specifically authorized and contemplated by the Court-
approved settlement agreement between the Trustee and multiple creditors and parties in interest,
including Mr. Domjancic, vTRAX FL, and Robbins Geller, and, based on the Trustee's business
judgment, is in the best interest of the Estate. The Estate currently lacks any liquid assets and the
proposed License will provide the Estate with significant cash consideration, while at the same
allowing the Trustee to license or sell the Patent to other third parties, or if necessary and
appropriate, pursue infringement litigation with respect to the Patent.  Because potential
purchasers or licensees of the Patent (or defendants in future litigation) may include defendants
in the Patent Litigation (defined in the Motion), other than Avaya, disclosure of the purchase
price under the License may disadvantage the Trustee in future negotiations or litigation—both
for the sale of the License and in future licensing arrangements with third parties or in litigation

7181276v1

settlement discussions. Accordingly, based on the foregoing, Trustee asserts that entering into the License is in the best interest of the Estate and should be approved, and the Trustee should be permitted to keep the consideration paid for the License confidential except with respect to the Court and the United States Trustee via *in camera* review, and to third parties that execute a confidentiality agreement in a form approved by the Trustee.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion in **Courtroom 1201 Richard B. Russell Federal Building, 75 Spring Street, S.W., Atlanta, Georgia 30303, at 10:00 a.m. on February 23, 2015 (the "Hearing").**

The Motion is available for review in the Clerk's Office, United States Bankruptcy Court, during normal business hours or online at http://ecf.ganb.uscourts.gov (registered users) or at http://pacer.psc.uscourts.gov (unregistered users).

Your rights may be affected by the Court's ruling on the Motion. You should read the Motion carefully and discuss it with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.). If you do not want the Court to grant the relief sought in the Motion or if you want the Court to consider your views, then you and/or your attorney must attend the Hearing. You may also file a written response to the Motion with the Clerk at the addresses stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two (2) business days before the hearing. The address of the Clerk's Office is: Clerk, U.S. Bankruptcy Court, Suite 1340, 75 Spring Street, S.W., Atlanta, Georgia 30303. You must also mail a copy of written your response to the Trustee at the address stated below, as well as to counsel to Avaya at the following address: J. William Boone, James-Bates-Brannan-Groover-LLP, 3399 Peachtree Rd. NE, Suite 1700, Atlanta, GA 30326.

Dated:  January 20, 2015                    ARNALL GOLDEN GREGORY LLP

                                            */s/ Sean C. Kulka*
                                            Sean C. Kulka, GA Bar No. 648919
                                            Telephone: (404) 873-8682
                                            Fax: (404) 873-8683
                                            Jonathan H. Azoff, GA Bar No. 754305
                                            Telephone: (404) 873-8794
                                            171 17th Street, NW
                                            Suite 2100
                                            Atlanta, Georgia 30363

                                            *Attorneys for Chapter 7 Trustee*

7181276v1

### Certificate Service

   I, Jonathan H. Azoff, certify that I am over the age of 18 and that, I served a copy of this *Notice of Hearing* and the *Motion to Grant Non-Exclusive Perpetual License in Patent and For other Relief Pursuant to 11 U.S.C. §§ 107(b) and 363 (b) and (f)* with adequate postage prepaid, to the following persons or entities at the addresses stated below, and on Exhibit "A," attached to this *Notice of Hearing*:

Gai Lynn McCarthy
Kumar, Prabhu, Patel & Banerjee LLC
1117 Perimeter Center West, Suite W311
Atlanta, Georgia 30388

Grace C. Butler
2127 Hawthorne Rd.
Grosse Pointe Woods, MI 48236

John Michael Domjancic
2127 Hawthorne Rd.
Grosse Pointe Woods, MI 48236

Herbert C. Broadfoot, II
Ragsdale, Beals, Seigler, et al.
2400 International Tower
229 Peachtree Street, N.E.
Atlanta, GA 30303

Stephen B. Davis
Law Office of Stephen B. Davis
11539 Park Woods Circle, Suite 304
Alpharetta, GA 30005

Gregory D. Ellis
Lamberth, Cifelli, Stokes, Ellis & Nason
3343 Peachtree Road, NE, Suite 550
Atlanta, GA 30326-1022

Charles Terrance Matthews
P.O. Box 511
Braselton, GA 30517

Thomas Wayne Dworschak
Office of the U. S. Trustee
75 Spring Street, SW, Room 362
Atlanta, GA 30303

7181276v1

J. William Boone
James-Bates-Brannan-Groover-LLP
3399 Peachtree Rd. NE, Suite 1700
Atlanta, GA 30326


This 20th day of January, 2015.

/s/ Jonathan H. Azoff
Jonathan H. Azoff

Label Matrix for local noticing
113E-1
Case 10-96519-mgd
Northern District of Georgia
Atlanta
Tue Jan 20 13:13:18 EST 2015

Bryan Cave Powell Goldstein
1201 W. Peachtree Street, NW
14th Floor
Atlanta, GA 30309-3488

IP Investment Group LLC
Attn: Ryan E. Strong
The Form, Suite 140
3930 E. Jones Bridge Road
Atlanta, GA 30092-2102

Jeff Field & Associates
342 North Clarendon Avenue
Scottdale, GA 30079-1320

Office of the United States Trustee
Room 362
75 Spring Street, SW
Atlanta, GA 30303-3330

Robbins Geller Rudman & Dowd LLP
c/o Scroggins & Williamson, P.C.
1500 Candler Road
127 Peachtree Street, NE
Atlanta, GA 30303-1854

Santander Consumer USA
P. O. Box 560284
Dallas, TX 75356-0284

VeriCrest Financial, Inc
Pendergast & Associates, P.C.
South Terraces, Suite 1000
115 Perimeter Center Place
Atlanta, GA 30346-1281

Absolute Collection Service
421 Fayetteville St., Suite 600
Raleigh, NC 27601-1777

Ally Financial
P.O. Box 380901
Bloomington, MN 55438-0901

Avaya, Inc.
c/o J. William Boone
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424

Bryan Cave, LLP
Attn: Charles Warner
1201 West Peachtree Street
14th Floor
Atlanta, GA 30309-3449

C& R innovations, Inc.
c/o Dwayne Rouse
3330 Satellite Bldv., Suite 1
Duluth, GA 30096-8600

Caine & Weiner
1699 E. Woodfield Road
Schaumburg, IL 60173-4935

Caliber Home Loans
f/k/a Vericrest Financial, Inc.
PO Box 24610
Oklahoma City, OK 73124-0610

Chase Bank USA, N.A.
PO Box 15145
Wilmington, DE 19850-5145

Chase/BP Private Label
P.O. Box 15298
Wilmington, DE 19850-5298

Chevron/GE Money Bank
Bankruptcy Dept.
P.O. Box 103104
Roswell, GA 30076-9104

Dr. Alan Glaser
27 Kingston Drive
Crafton, PA 15205-4523

EMORY EASTSIDE MEDICAL CENTER
c/o B-Line, LLC
MS 550
PO Box 91121
Seattle, WA 98111-9221

Emory Eastside Medical Center
P.O. Box 99400
Louisville, KY 40269-0400

FHA/HUD
Five Points Plaza
40 Marietta Street
Atlanta, GA 30303-2812

GE Money Bank
c/o Recovery Management Systems Corporat
25 SE 2nd Ave Suite 1120
Miami FL 33131-1605

(p)GEORGIA DEPARTMENT OF REVENUE
COMPLIANCE DIVISION
ARCS BANKRUPTCY
1800 CENTURY BLVD NE SUITE 9100
ATLANTA GA 30345-3202

Grace C. Butler
2127 Hawthorne Rd.
Grosse Pointe Woods, MI 48236-1433

Gwinnett Cty. Tax Commissioner
P.O. Box 372
Lawrenceville, GA 30046-0372

Hayes Chrysler-Dodge
3115 Frontage Road
Gainesville, GA 30504-8210

IBM Southeast Emp. FCU
790 Park of Commerce Blvd.
Boca Raton, FL 33487-3619

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

EXHIBIT

A

Internal Revenue Svc./Insolvency Unit
401 West Peachtree St., NW
Room 400, Stop 334-D
Atlanta, GA 30308

John C. Herman
Robbins Geller Rudman & Dowd, LLP
3424 Peachtree Street NE, Suite 1650
Atlanta, GA 30326-2824

John Domjancic
2127 Hawthorne Road
Grosse Pointe Woods, MI 48236-1433

John Domjancic
3404 Mill Place Court
Dacula, GA 30019-1297

John Keeley
10403 Montrose Avenue
Apt. #2
Bethesda, MD 20814-4160

Joyce Domyancic
108 Truman Drive
Monaca, PA 15061-2562

Macy's/DSNB
9111 Duke Blvd.
Mason, OH 45040-8999

Medical Data Systems, Inc.
1374 S. Babcock St.
Melbourne, FL 32901-3009

Midland Funding LLC
By its authorized agent Recoser, LLC
25 SE 2nd Ave, Suite 1120
Miami, FL 33131-1605

Office of Chief Counsel
401 West Peachtree St., NE
Room 1400, Stop 1400
Atlanta, GA 30308-3513

Palm Coast Data LLC
Gunster Yoakley & Stewart, P.A.
Attn: Christian A. Petersen
450 East Las Olas Boulevard
Suite 1400
Fort Lauderdale, Florida 33301-4206

Palm Coast Data LLC
c/o Christian A. Petersen, Esquire
Gunster, Yoakley & Stewart, P.A.
450 East Las Olas Blvd, Ste. 1400
Fort Lauderdale, Florida 33301-4206

Pendergast & Jones, P.C.
Attorneys at Law
115 Perimeter Ctr. Pl., Suite 1000
South Terraces, Atlanta, GA 30346-1281

Recovery Management Systems Corporation
25 S.E. 2nd Avenue, Suite 1120
Miami, FL 33131-1605

Robbins Geller Rudman & Dowd LLP
c/o Scroggins & Williamson, P.C.
1500 Candler Building
127 Peachtree Street, NE
Atlanta, GA 30303-1854

Santander Consumer USA
Bankruptcy Dept.
P.O. Box 560284
Dallas, TX 75356-0284

Siemens Enterprise Communications, Inc.
Pepper Hamilton LLP
Attn: Todd A. Feinsmith
15th Fl Oliver St Tower 125 High St
Boston, MA 02110-2736

South Gwinnett Radiology, PC
P.O. Box 371863
Pittsburgh, PA 15250-7863

Spooner & Associates
3451 Lawrenceville-Suwanne Rd.
Suite C
Suwanee, GA 30024-6506

Stephen R. Risley
Smith Risley Tempel Santos, LLC
Two Ravina Drive, Suite 700
Atlanta, GA 30346-2105

Steve Beaudry, CPA
1022 Indian Trail Road
Lilburn, GA 30047-1722

Thurbert Baker
Attorney General of Georgia
132 State Judicial Bldg.
Atlanta, GA 30334

U.S. Atty. Gen./IRS/Dept. of Justice
Tax Div./P.O. Box 14198, Ben Frank.,
St., Civil Trial Sec., S. Region
Washington, DC 20044

U.S. Atty./North. Dist. of GA
401 W. P'tree St., NW
Suite 1400, Stop 1000-D
Atlanta, GA 30308-3513

United States Attorney
Middle District of Georgia
P.O. Box 1702
Macon, GA 31202-1702

United States Atty./IRS
Northern Dist. of GA
600 United States Courthouse
75 Spring St., SW
Atlanta, GA 30303-3315

Vericrest Financial, Inc.
715 Metropolitan Avenue
Oklahoma City, OK 73108-2088

Vericrest Financial, Inc.
P.O. Box 24610
Oklahoma City, OK 73124-0610

Veterans Administration
1700 Clairmont Road
Decatur, GA 30033-4032

West Asset Management
2703 N. Hwy. 75
Sherman, TX 75090-2567

Woodlands at Chateau Elan
Owners Association
2555 Westside Pkwy., Suite 600
Alpharetta, GA 30004-4191

Woodlands at Chateau Elan HOA
6155 Gold Club Drive
Braselton, GA 30517-2572

Charles Terrance Matthews
P.O. Box 511
Braselton, GA 30517-0009

G. Frank Nason IV
Lamberth, Cifelli, Stokes Ellis & Nason
Ste 550
3343 Peachtree Rd., NE
Atlanta, GA 30326-1428

Gai Lynn McCarthy
Kumar, Prabhu, Patel & Banerjee, LLC
Suite W311
1117 Perimeter Center West
Atlanta, GA 30338-5446

Gregory D. Ellis
Lamberth, Cifelli, Stokes, Ellis & Nason
Suite 550
3343 Peachtree Road, NE
Atlanta, GA 30326-1428

John C. Domjancic
Herbert C. Broadfoot II
2400 International Tower
229 Peachtree St. NE
Atlanta, GA 30303-1601

Robert B. Campos
Lamberth, Cifelli, Stokes, Ellis & Nason
Suite 550
3343 Peachtree Road, NE
Atlanta, GA 30326-1428

Roberta Lynn Matthews
P.O. Box 511
Braselton, GA 30517-0009

S. Gregory Hays
Hays Financial Consulting, LLC
Suite 200
3343 Peachtree Road, NE
Atlanta, GA 30326-1420

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Georgia Department of Revenue
Bankruptcy Section
1800 Century Blvd NE, Suite 17200
Atlanta, GA 30345

(d)Georgia Dept. of Revenue
State of Georgia
P.O. Box 161108
Atlanta, GA 30321

Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Avaya, Inc.

(u)Lamberth, Cifelli, Stokes, Ellis & Nason,

(u)Recovery Management Systems Corporation

(d)Grace C. Butler
2127 Hawthorne Road
Grosse Pointe Woods, MI 48236-1433

(d)Grace C. Butler
2127 Hawthorne Rd.
Grosse Pointe Woods, MI 48236-1433

End of Label Matrix
Mailable recipients    69
Bypassed recipients     5
Total                  74